# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ismael Rodriguez, | No. CV 11-0926-PHX-DGC-ECV |
| Plaintiff, | **ORDER** |
| vs. | |
| Correctional Officer Miramontes, et al., | |
| Defendants. | |

Plaintiff Ismael Rodriguez, who is now confined in the California State Prison-Los Angeles County, in Lancaster, California, filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983, which the Court dismissed with leave to amend. (Doc. 5.) Plaintiff has filed a First Amended Complaint. (Doc. 7.) The Court will order Defendant Miramontes to answer Counts I and II of the First Amended Complaint and will dismiss the remaining claims and Defendants without prejudice.

**I.     Statutory Screening of Prisoner Complaints**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the

1  pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added).  While Rule 8 does not
2  demand detailed factual allegations, "it demands more than an unadorned, the-defendant-
3  unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).
4  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
5  statements, do not suffice."  Id.

6  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a
7  claim to relief that is plausible on its face.'"  Id. (quoting Bell Atlantic Corp. v. Twombly,
8  550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content
9  that allows the court to draw the reasonable inference that the defendant is liable for the
10  misconduct alleged."  Id.  "Determining whether a complaint states a plausible claim for
11  relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial
12  experience and common sense."  Id. at 1950.  Thus, although a plaintiff's specific factual
13  allegations may be consistent with a constitutional claim, a court must assess whether there
14  are other "more likely explanations" for a defendant's conduct.  Id. at 1951.

15  But as the United States Court of Appeals for the Ninth Circuit has instructed, courts
16  must "continue to construe *pro se* filings liberally."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th
17  Cir. 2010).  A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards
18  than formal pleadings drafted by lawyers.'"  Id. (quoting Erickson v. Pardus, 551 U.S. 89,
19  94 (2007) (*per curiam*)).

20  **II.    First Amended Complaint**

21  Plaintiff alleges three counts for failure to protect and conspiracy while he was an
22  inmate at La Palma Correctional Center (LPCC), a Corrections Corporation of America
23  (CCA) facility in Eloy, Arizona.  Plaintiff sues the following current or former LPCC
24  employees: Corrections Officer (CO) Miramontes, Unit Manager Maryweather, Sergeant
25  Bahl, Warden McDonald, and John Doe 1.  Plaintiff seeks declaratory, compensatory and
26  punitive relief.

27  Plaintiff alleges the following facts: Plaintiff was incarcerated at LPCC between April
28  20, 2009 and January 25, 2011.  Plaintiff was subject to Protective Custody (PC) to protect

him from General Population (GP) inmates and he was apparently placed in PC in November 2010 after he was targeted by "Southern Hispanics" as a "snitch".[1]  (Doc. 7 at ¶¶ 10-11.)

On December 24, 2010, CO Miramontes took Plaintiff from the Administrative Segregation Unit (AdSeg), where he was held, to the exercise yard and placed him in a locked single-person cage for recreation. Prior to Plaintiff's placement in the cage and unbeknownst to Plaintiff, another inmate had made a hole in the fence between Plaintiff's cage and the cage adjoining it. Although Miramontes had responsibility for inspecting the cages before and after each inmate use, he failed to do so and Plaintiff did see the hole.

About five minutes after putting Plaintiff in his cage, Miramontes placed GP inmate Mercado in the adjoining cage. While Miramontes was standing there, Mercado began verbally insulting, and attempting to provoke, Plaintiff. Mercado told Miramontes to move him to another cage or he would attack Plaintiff. Miramontes responded, "I don't care what you do. Just do it when I leave." (Id. at ¶ 22.) Mercado said to give him a "little bit more time." (Id. at ¶ 23.) Miramontes left the area in violation of procedures and despite Mercado's threats. Mercado then rushed to the area of the fence that had previously been unraveled and began unraveling it further. At that point, Plaintiff told Mercado not to "do it" and said that "it's not worth it." (Id. at ¶ 26.) Inmate Gonzales, who was in a different cage, saw Mercado unraveling the fence and also began yelling at Mercado not to do it. Despite the yelling of Plaintiff and Gonzales for several minutes, and Doe I's observation from the control booth, no officers appeared. After unwinding the fence for five to ten minutes, Mercado was able to slip through the hole into Plaintiff's cage and began viciously attacking him. Plaintiff contends that Doe I, in the control booth, and Miramontes observed Mercado unraveling the fence during the five to ten minutes it took him to do so, but both deliberately failed to act until three to five minutes into the attack. Only after the attack had been going for three to five minutes did Miramontes and other officers arrive. Officers used

---

[1] According to Plaintiff, Southern Hispanic gang-members had made several unsuccessful attempts to assault him, but he does not allege when, where, or by whom, nor does he allege how he learned of such attempts.

1 pepper spray on both Plaintiff and Mercado and ordered them into prone positions.  Plaintiff
2 and Mercado were then taken to medical.  Plaintiff suffered "severe tissue damage" to his left
3 pinky finger and injuries to his left shoulder, left wrist, and lower back.  Plaintiff contends
4 that the incident and "illegal acts" of Miramontes and Doe 1 were video-recorded.

Plaintiff contends that Unit Manager Maryweather implemented a policy of Warden McDonald to *not* segregate recreation periods of GP inmates from PC inmates.  He further contends that McDonald was aware of several past attempts against him by GP inmates. Further, he contends that Sergeant Bahl was responsible for investigating the above assault, but subsequently refused to provide Plaintiff with the results of his investigation.

### III. Failure to State a Claim

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right.  Wood v. Ostrander, 879 F.2d 583, 587 (9th Cir. 1989).  In addition, to state a valid constitutional claim, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976).

#### A. John Doe I

Plaintiff sues Doe I and alleges that he observed Mercado enlarge the hole in the recreation cage and then assault Plaintiff for several minutes without summoning aid.  Rule 10(a) of the Federal Rules of Civil Procedure requires a plaintiff to include the names of the parties to an action.  As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint on an anonymous defendant.

The Ninth Circuit has held that where identity is unknown prior to the filing of a complaint, the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.  Wakefield v. Thompson, 177 F.3d

1160, 1163 (9th Cir. 1999) (citing Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)). Plaintiff may use the discovery processes to obtain the names of the persons whom he believes violated his constitutional rights. If Plaintiff discovers the true identity of this Defendant through the discovery process, or otherwise, he may seek leave of the Court to amend his complaint to name that person.

### B. Defendants Maryweather, Bahl, and McDonald

Plaintiff sues Maryweather, Bahl, and McDonald as Defendants. While each of them may be sued, Plaintiff fails to state a claim against any of them. To state a claim against a defendant, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). For an individual to be liable in his official capacity, a plaintiff must allege that the official acted as a result of a policy, practice, or custom. See Cortez v. County of Los Angeles, 294 F.3d 1186, 1188 (9th Cir. 2001). In addition, there is no *respondeat superior* liability under § 1983, so a defendant's position as the supervisor of someone who allegedly violated a plaintiff's constitutional rights does not make him liable. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor, 880 F.2d at 1045. Further, where a defendant's only involvement in allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy the alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999); accord Mintun v. Blades, No. CV-06-139-BLW, 2008 WL 711636, at *7 (D. Idaho Mar. 14, 2008); Stocker v. Warden, No. 1:07-CV-00589LJODLBP, 2009 WL 981323, at *10 (E.D. Cal. Apr. 13, 2009).

Plaintiff asserts that McDonald implemented a policy that failed to require separate recreation periods for GP and PC inmates. Plaintiff alleges that Defendants Maryweather

1 and Bahl implemented the policy. Plaintiff contends that Defendants Miramontes and Doe
2 I relied on that policy as a pretext to set up a fight between Plaintiff and Mercado. Plaintiff
3 claims that he heard Bahl tell Miramontes to put Mercado in the adjacent cage, consistent
4 with that policy, on the day of the assault. Plaintiff subsequently asked Maryweather and
5 Bahl for a copy of the Incident Report, but both refused. Plaintiff contends that Maryweather
6 subsequently told him that he (Maryweather) would ensure that Plaintiff's grievance appeal
7 would never be processed. Plaintiff contends that Maryweather, Bahl, and McDonald have
8 conspired to block Plaintiff's efforts to have the incident investigated and grieved.

Plaintiff fails to allege facts to support that McDonald, Maryweather, or Bahl implemented the policy knowing there was a substantial risk to Plaintiff or that he was likely to be assaulted if GP and PC inmates were not completely segregated during recreation. Nor does Plaintiff allege facts to support that Bahl was aware that there was a hole between the cages or that Bahl knew of a substantial risk to Plaintiff's safety if Mercado was placed in the adjacent cage. Plaintiff otherwise seeks relief based upon the handling of the post-assault investigation and grievance process. As stated above, that is not sufficient to state a constitutional claim. Accordingly, Defendants McDonald, Maryweather, and Bahl will be dismissed.

### C. Count III

In Count III, Plaintiff alleges that Defendant McDonald, through a subordinate, wrongly rejected his grievance and that McDonald and that subordinate have since failed to comply with grievance procedures. He further contends that McDonald, Maryweather, and Bahl have done so for pretextual reasons, i.e., to cover-up the circumstances of the assault. "There is no legitimate claim of entitlement to a [prison] grievance procedure." Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Absent more, Plaintiff fails to state a constitutional claim based on the failure to comply with grievance procedures. Accordingly, Count III will be dismissed.

### V. Claims for Which an Answer Will be Required

1 Plaintiff adequately states a claim for failure to protect against Defendant Miramontes
2 in Counts I and II. Accordingly, Miramontes will be required to respond to these counts.

**VI. Warnings**

### A. Release

Plaintiff must pay the unpaid balance of the filing fee within 120 days of his release. Also, within 30 days of his release, he must either (1) notify the Court that he intends to pay the balance or (2) show good cause, in writing, why he cannot. Failure to comply may result in dismissal of this action.

### B. Address Changes

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure. Plaintiff must not include a motion for other relief with a notice of change of address. Failure to comply may result in dismissal of this action.

### C. Copies

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

### D. Possible Dismissal

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1) Count III and Defendants McDonald, Bahl, and Maryweather are **dismissed** without prejudice. (Doc. 7.)

(2) Defendant Miramontes must answer Counts I and II.

1     (3) The Clerk of Court must send Plaintiff a service packet including the First Amended Complaint (Doc. 7), this Order, and both summons and request for waiver forms for Defendant Miramontes.

    (4) Plaintiff must complete and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

    (5) If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and First Amended Complaint on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

    (6) The United States Marshal must retain the Summons, a copy of the First Amended Complaint, and a copy of this Order for future use.

    (7) The United States Marshal must notify Defendant of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

        (a) personally serve copies of the Summons, First Amended Complaint, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

        (b) within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of

1 | the Summons, First Amended Complaint, or this Order and for preparing new process
2 | receipt and return forms (USM-285), if required. Costs of service will be taxed
3 | against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules
4 | of Civil Procedure, unless otherwise ordered by the Court.

(8) **A Defendant who agrees to waive service of the Summons and First Amended Complaint must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(9) Defendant must answer the First Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(10) Any answer or response must state the specific Defendant by name on whose behalf it is filed. The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(11) This matter is referred to Magistrate Judge Edward C. Voss pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 7th day of September, 2011.

*David G. Campbell*
David G. Campbell
United States District Judge