SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

Ismael Rodriguez,                              )    No. CV 11-0926-PHX-DGC (ECV)
                                               )
         Plaintiff,                            )
                                               )
v.                                             )    **ORDER**
                                               )
Unknown Miramontes, et al.,                    )
                                               )
         Defendants.                           )
_____)

       Plaintiff Ismael Rodriguez, a California Department of Corrections and Rehabilitation (CDCR) inmate who was confined in the La Palma Correctional Center (LPCC) of the Corrections Corporation of America (CCA), filed a *pro se* civil rights Complaint pursuant to 42 U.S.C. § 1983. (Doc. 7.) The only remaining Defendant—J. Bustamonte—moves to dismiss the only remaining claim. He asserts that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA).[1] (Doc. 26.) The Court will deny the motion.

**I.     Background**

       In his First Amended Complaint, Plaintiff alleged that he was incarcerated at LPCC between April 20, 2009 and January 25, 2011. Plaintiff was apparently placed in protective custody (PC) in November 2010 after he was targeted by "Southern Hispanics" as a "snitch."

---

[1]The Court issued a Notice pursuant to <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003), advising Plaintiff of his obligation to respond. (Doc. 27.)

(Doc. 7.)  On December 24, 2010, CO Bustamante[2] took Plaintiff from the Administrative Segregation Unit (AdSeg), where he was held, to the exercise yard and placed him in a locked single-person cage for recreation.  Unbeknownst to Plaintiff, another inmate had made a hole in the fence between Plaintiff's cage and the cage adjoining it. Although Bustamonte had responsibility for inspecting the cages before and after each inmate use, he failed to do so.  About five minutes after putting Plaintiff in his cage, Bustamonte placed GP inmate Mercado in the adjoining cage. While Bustamonte was standing there, Mercado began attempting to provoke Plaintiff.  Mercado told Bustamonte to move him to another cage or he would attack Plaintiff.  Bustamonte responded that he did not care what Mercado did, and Mercado asked for more time.  Bustamonte left the area in violation of procedures and despite Mercado's threats.

Mercado then unraveled the fence, slipped through the hole into Plaintiff's cage, and attacked him.  Plaintiff contends that officers in the control booth and Bustamante observed Mercado unraveling the fence but deliberately failed to act until three to five minutes into the attack. (Id.)

Defendant moves to dismiss on the ground that Plaintiff failed to exhaust his administrative remedies as to any claim.  (Doc. 26.)   Plaintiff opposes the motion.[3]

## II.   Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action concerning prison conditions.  See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009).  Exhaustion is required for all suits about

---

[2]In the First Amended Complaint, Plaintiff named Miramontes as a Defendant. (Doc. 7.)  Plaintiff was subsequently advised that no such person was employed at LPCC, and the Court granted Plaintiff's motion to conduct limited discovery regarding that Defendant's true identity.  (Doc. 9, 12, 17.)  Thereafter, Bustamente was served.  (Doc. 21.)

[3]In support of his motion, Defendant submits the affidavit of R. Williams, Grievance Coordinator at LPCC (Doc. 26, Ex. 1, Williams Aff.), with attachment: Grievance Procedures for CDCR Inmates (id., Ex. 1, Attach. A).  Plaintiff submits his Response (Doc. 31) and attachments.  In addition, Plaintiff attached grievance documents to his First Amended Complaint.  (Doc. 7.)

1  prison life, <u>Porter v. Nussle</u>, 534 U.S. 516, 523 (2002), regardless of the type of relief offered
2  through the administrative process, <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001).  A prisoner
3  must complete the administrative review process in accordance with the applicable rules.
4  <u>See</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006).

5      Exhaustion is an affirmative defense.  <u>Jones v. Bock</u>, 549 U.S. 199, 212 (2007).  Thus,
6  the defendant bears the burden of raising and proving the absence of exhaustion.  <u>Wyatt</u>, 315
7  F.3d at 1119.  Because exhaustion is a matter of abatement in an unenumerated Rule 12(b)
8  motion, a court may look beyond the pleadings to decide disputed issues of fact.  <u>Id.</u> at 1119-
9  20.  Further, a court has broad discretion as to the method to be used in resolving the factual
10  dispute.  <u>Ritza v. Int'l Longshoremen's & Warehousemen's Union</u>, 837 F.2d 365, 369 (9th
11  Cir. 1988) (quotation omitted).

12  **III.  Parties' Contentions**

13      **A.    The Grievance Process**

14          **1.    Defendant**

15  Defendant asserts that the administrative remedies procedure for CDCR inmates in
16  CCA facilities is set forth in LPCC Policy 14-101, *Grievance Procedures for CDCR Inmates*.
17  (Doc. 26, Ex. 1, Williams Aff. ¶ 8.)  Policy 14-101, effective March 20, 2009, was in effect
18  at the time of Plaintiff's initial intake at LPCC on April 20, 2009, and at all relevant times,
19  and it is modeled after and incorporates the timelines and requirements of Title 15 of the
20  California Code of Regulations.  (<u>Id.</u> ¶¶ 8-9, citing Cal. Code of Regulations 15 § 3084.)

21      The grievance process has four levels.  (<u>Id.</u> ¶ 11.)  Except for emergency grievances
22  and appeals of CDCR decisions, inmates are to first submit questions, disputes, or complaints
23  to appropriate staff through the facility mail or in person on an Informal Resolution Form
24  (Form 14-101A) within 15 work days of the incident. (<u>Id.</u> ¶ 17.)  According to Williams,
25  inmates have been instructed to place Informal Resolutions and Formal Grievances in the
26  grievance box located in each building and each administrative segregation unit.  (<u>Id.</u> ¶ 31.)
27  Unless a time extension is granted due to unusual circumstances, a CDCR inmate will receive
28  a response to an informal resolution within 10 working days of submitting Form 14-101A.

1   (Id.)  If not satisfied, the inmate can file a Level One formal grievance on Form 14-101B

2   within 15 working days of receipt of the response to his informal resolution, attaching a copy

3   of the informal resolution and response.  (Id. ¶ 18.)  If the grievance form is completed

4   correctly, the Grievance Coordinator logs it and submits it to the appropriate department.

5   (Id.)  The facility Warden or Administrative Duty Officer then reviews each response before

6   it is provided to the inmate.  (Id.)  Unless unusual circumstances necessitate a time extension,

7   a CDCR inmate will receive a response to a Level One formal grievance within 30 working

8   days of submission of a proper and complete Form 14-101B.  (Id.)

9          If an inmate is dissatisfied with the response to the formal grievance, he may, within

10   15 working days of receipt of the response, submit a Level Two appeal to the California Out

11   of State Correctional Facilities (COCF) Appeals Coordinator.  (Id. ¶ 20.)  If the inmate is still

12   dissatisfied with the COCF decision, he may submit a Level Three formal grievance to the

13   COCF Director within 15 working days of receipt of the Level Two response.  (Id. ¶ 21.)

14          In addition, according to Defendant, denial of the grievance process, including not

15   receiving responses to submitted grievances, is a grievable matter.  (Id. ¶ 44.)  A review of

16   Plaintiff's grievance log indicates he never initiated the grievance process regarding an

17   inability to receive responses to his grievances or a deficiency with the grievance policy.  (Id.

18   ¶ 45.)  Plaintiff was not prevented from complying with the exhaustion requirements due to

19   "unlawful policies" at LPCC or for any other reason.  If Plaintiff was not getting an answer

20   at the facility level, the next appropriate step would have been to forward his complaint

21   through to California, and there is no evidence he did so.  (Id. ¶ 47.)

22          **2.    Plaintiff**

23          Plaintiff asserts that prisoners can use the CDCR administrative process to pursue a

24   citizen's complaint against CDCR employees.  (Doc. 31 at 8, citing 15 CCR § 3084.1(e).)

25   He claims that CDCR 602 procedures apply to citizens complaints with some exceptions and

26   that the 15-day limit does not apply for the initial filing of the appeal; instead, there is a one-

27   year limit for filing appeals regarding employee misconduct.  (Doc. 31 at 9, citing 15 CCR

28   § 3391.)  In addition, there is no need to seek informal review before filing at the first formal

level.  (Doc. 31 at 9, citing 15 CCR § 3084.5(a)(3)(G).)  An appeal alleging misconduct by a departmental employee must be accompanied by certain documentation.

Plaintiff argues that prison officials cannot render the appeals process unavailable through their misconduct, and he argues that the failure to respond to a grievance within the time lines made the remedy unavailable, excusing exhaustion.  (Doc. 31 at 4-5.)  Plaintiff argues that there is a dispute of fact whether the process was made unavailable by  prison officials' affirmative misconduct.  (Id. at 6.)  He contends that the Court must accept as true all material allegations in the complaint; he appears to argue that because he discussed his efforts at exhaustion in the First Amended Complaint, the Court must accept his assertions as true.  (Id. at 6, 13, 5, 16.)

**B.     The Grievance Documents**

**1.     January 11, 2011 Inmate Informal Resolution**

*a.    Defendant*

Defendant notes that Plaintiff allegedly submitted an Informal Resolution on January 11, 2011, which discusses the December 24, 2010 incident and asks for compensation.  (Doc. 7 at 26.)  Defendant asserts that the grievance log indicates this Informal Resolution was never submitted to the Grievance Coordinator or to her office and that each grievance submitted to the grievance coordinator is date stamped, assigned a log number, and logged in the inmate's grievance log.  (Doc. 26, Williams Aff. ¶ 29.)  Plaintiff's informal resolution does not contain a date stamp or a log number and is not referenced in the Grievance Coordinator's log.  It contains the notation "Rec. by Lt. Ladd."  (Id.  ¶ 31.) Defendant argues that although it may have been handed to a Lieutenant, inmates have been instructed to place informal/formal complaints in the grievance box located in each building and in each administrative segregation unit.  (Id.)  Therefore, this informal resolution was never properly submitted.

In addition, Defendant asserts that even if submitted for resolution, it would have been improper because Plaintiff only had 15 days from the incident to file an Informal Resolution.  (Id. ¶ 33.)  The incident occurred on December 24, 2010, and Plaintiff allegedly submitted

1   it on January 11, 2011, "well past the January 8, 2011 deadline."  (Id.)

2       Defendant also argues that the informal resolution does not contain many of the

3   allegations Plaintiff makes against Defendant in his First Amended Complaint.  For example,

4   there is no mention of any failure to protect by Defendant, any mention of the threats

5   allegedly made by Mercado to Plaintiff, or of Defendant's alleged conspiracy to place

6   Plaintiff next to Mercado.  (Doc. 26 at 8.)

7       Plaintiff never followed up his Informal Resolution with a grievance or grievance

8   appeal as require by the LPCC grievance process.  (Id., Williams Aff. ¶ 34.)  Plaintiff

9   therefore failed to exhaust his available administrative remedies with regards to this allegedly

10  submitted informal resolution.  (Id.)

11              **b.    *Plaintiff***

12      Plaintiff argues that he did not have to file an Informal Resolution, but that he did so.

13  He asserts that it was timely because it must be filed within 15 *working* days.  (Doc. 31 at

14  15.)  He asserts that he handed the document to Lt. Ladd because Plaintiff did not have

15  access to the grievance box due to his housing in AdSeg where he was in his cell 23.5 hours

16  per day.  He claims that the grievance was received by staff on January 15.  (Id. at 16.) As

17  for the contents of the Informal Resolution, Plaintiff claims that in California, the CDCR

18  form requires the inmate to "describe the problem and action requested."  (Id. at 14.)  The

19  grievance does not have to contain legal terminology or legal theories unless they are needed

20  to provide notice of the harm.   He argues that he satisfied the California statutory

21  requirements and Defendant submits only the LPCC procedure.  (Id. at 15.)

22              **c.    *Reply***

23      In his Reply, Defendant again argues that nothing on the Informal Resolution form

24  indicates it was ever received by any staff member at the grievance office.  (Doc. 32 at 5.)

25  To have properly submitted this grievance, Plaintiff was required to place this informal

26  resolution in the grievance box located in each building and in each administrative

27  segregation unit.  Plaintiff never followed up this allegedly submitted informal resolution

28  with a grievance or grievance appeal as required by the LPCC grievance policy.  (Id.)  Even

1   if Plaintiff had in fact submitted this grievance, it still would have been improper as it was

2   filed late; contrary to Plaintiff's allegation to the contrary, Plaintiff was required to file this

3   grievance by January 8, 2011.  (Id. at 6.)

4          **2.**       **February 17, 2011 Letter to Warden**

5          Defendant contends that Plaintiff allegedly wrote to Warden McDonald regarding the

6   status of the January 11, 2011 informal resolution; the letter was designated "Inmate Appeal

7   Process and Response."  (Doc. 26 at 9.)  Defendant argues that Informal Resolutions and

8   Grievances must be submitted in writing on the appropriate form and that letters  to LPCC,

9   the Warden, or the Facility Support Center are not recognized as grievances under Policy 14-

10  101. The letter should have been on a 602 Inmate/Parolee Appeal Form.  Level Two Appeals

11  are to be submitted to the COCF Appeals Coordinator, not the Warden.  (Id., Willaims Aff.

12  ¶¶ 21, 36.)  In addition, Plaintiff's letter was allegedly submitted on February 17, 2011 but

13  the incident occurred on December 24, 2010. Therefore, Plaintiff submitted this letter past

14  the 30-day time frame.  It was not a proper appeal because Plaintiff never properly submitted

15  an Informal Resolution Form 14-101(A) or a Formal Grievance regarding the December 24,

16  2010 incident.  (Id. ¶ 37.)

17         Plaintiff asserts that he sent the letter.  (Doc. 31 at 11.)

18         **3.**       **March 9, 2011 Inmate/Parolee Appeal Screening Form and April 5, 2011**

19  **Inmate/Parolee Appeal Screening Form**

20         Plaintiff submitted a CDCR 602 Appeal Form and received an Inmate/Parolee Appeal

21  Screening Form (CDCR 695) dated March 9, 2011.  (Doc. 7 at 33.)  Grievance Coordinator

22  R. Williams advised Plaintiff that he failed to properly submit an appeal because he was

23  using an outdated form (CDCR 602) and told Plaintiff to resubmit it. Plaintiff did not do so.

24  (Doc. 26, Williams Aff. ¶ 40.)  Plaintiff submitted a second CDCR 602 Appeal Form and

25  received a second Inmate/Parolee Appeal Screening Form (CDCR 695) dated April 5, 2011,

26  which again advised Plaintiff that he was using an outdated form and that he should resubmit

27  his appeal using the new CDCR Form 22.  (Doc. 7 at 36; Doc. 26, Williams Aff. ¶ 41.)

28  Plaintiff failed to do so.  (Id.)

1  Plaintiff argues that Williams never mentioned that Plaintiff had failed to file a
2  complaint and that the instruction to resubmit his complaint on a new CDCR form 22 for
3  Informal Response should have been waived due to the claims of misconduct by Defendants.
4  (Doc. 31 at 12.)  Moreover, Unit Manager Maryweather told Plaintiff on January 18, 2011,
5  that the appeal sent to Ladd will never be processed.  (Id.)

6  **4.     May 2, 2011 Letter to Grievance Coordinator and Corresponding CDCR**
7  **22 Form**

8  On May 2, 2011, Plaintiff allegedly sent a letter to Grievance Coordinator Williams
9  regarding the screening form dated April 5, 2011, and he attached a CDCR 22 Appeal Form
10  regarding the December 24 incident.  (Doc. 7 at 37.)  Defendant asserts that neither document
11  was ever received at LPCC. When CDCR 22 forms are submitted, they are date stamped,
12  assigned grievance numbers and logged in the inmate's grievance file. The CDCR 22 form
13  is blank, indicating it was never received at LPCC. (Doc. 26, Williams Aff. ¶ 43.) And the
14  letter has no indication, such as a date stamp, of ever being received by the grievance office.
15  (Id.)

16  **III.    Analysis**

17  The Court will deny Defendant's motion to dismiss.  Defendant establishes the
18  existence of an administrative-remedy procedure and that Plaintiff did not completely
19  exhaust his remedies under that procedure. But the Court finds that, on this record, Plaintiff
20  demonstrates a sufficient excuse for not exhausting his remedies.[4]

21  The Court reviewed the California regulations, in addition to the procedure provided
22  by Defendant, in order to try to understand Plaintiff's arguments regarding the procedure.[5]
23  Although Defendant does not discuss changes to the California regulations, the Court's

24

25
26  [4]The Court need not consider Plaintiff's Sur-reply.  (Doc. 39.)

27  [5]The Court was unable to locate any § 3084.5(a)(3)(G) as relied on by Plaintiff.  Such
a provision may have been in the version of the regulations that preceded the 2010-2011
28  changes.  But Plaintiff's argument that he did not have to file an Informal Resolution would
not help him because he never filed a formal grievance.

1   research shows that on December 13, 2010, 15 CCR § 3084.1 et seq. was amended as an

2   emergency and was operative January 28, 2011.  See e.g., 15 CCR § 3084.1, Historical Note

3   11.  The incident about which Plaintiff complains occurred on December 24, 2010.  In

4   addition, Plaintiff was transferred from LPCC on January 25, 2011, and was sent to the

5   California State Prison in Los Angeles County.  It is unclear whether the new regulations

6   became operative at the time when Plaintiff was to initiate the grievance process or during

7   the process.  But the Court need not determine the applicability of the California regulations

8   and changes because applying the grievance procedure proffered by Defendant, the Court

9   finds that Plaintiff filed a proper Informal Resolution to which he received no response.

10  According to Defendant's evidence, under the LPCC procedure, this effectively made it

11  impossible for Plaintiff to proceed to the next step to exhaust his remedies, thereby excusing

12  proper exhaustion.

13         Defendant argues that the November 15, 2009 Informal Resolution form was not

14  properly submitted, claiming that inmates are advised to file it in the grievance box.  In fact,

15  the LPCC procedure states "with the exception of informal resolutions related to medical care

16  and treatment, CDCR inmates are required to submit 14-101A's through facility mail, or in

17  person, to the appropriate unit staff."  (Doc. 26, Ex. 1, Attach. 1, 14-101.4 N(1)(c).)  The

18  "appropriate unit staff" is not further defined.  The notation "Rec'd by Lt. Ladd"  appears in

19  the upper right-hand corner of the Informal Resolution.  (Doc. 7 at 26.)  Defendant does not

20  claim that there is no such staff member, nor does Defendant provide an affidavit from Ladd

21  asserting that he did not, in fact, accept the Informal Resolution.  In the "date received"

22  section, there is a hand-written note that the document was received on January 15, 2011.

23  Defendant does not dispute the authenticity of this notation.  In addition, Defendant offers

24  no evidence suggesting that Ladd was not "appropriate unit staff" to accept the grievance.

25  Even if Ladd was not an "appropriate unit staff," once he accepted the Informal Resolution,

26  Plaintiff had a right to rely on that as proper submission.  Just as prison officials could waive

27  the time frames or other alleged defects, they can, by their conduct, waive a requirement that

28  the grievance be placed in the mailbox or handed to a particular staff member.

1    As for timeliness, the Court finds that Defendant's assertion that the Informal

2    Resolution was due by January 8 is incorrect.  The LPCC grievance procedure clearly states

3    that the Informal Resolution is to be filed within 15 *working* days of the incident.[6]  (Doc. 26,

4    Ex. 1, Attach. 1, 14-101.4 N(3)(a).)  In the reply, Defendant asserts that the 15 days includes

5    Saturday and Sunday.  (Doc. 32, Ex. A, Williams Aff. ¶ 12.)  Either Williams is incorrect that

6    working days includes Saturdays and Sundays—Defendant cites nothing in support of that

7    interpretation—or the language of the policy is misleading.  The common understanding of

8    "working days" excludes Saturdays, Sundays, and holidays.  From December 24, 2010 to

9    January 8, 2011 is 15 *calendar* days, not 15 *working* days.

10    Plaintiff asserts that he handed the Informal Resolution to Lt. Ladd on January 11, and

11    the notation on the form acknowledges receipt by Saturday, January 15.  The incident

12    occurred on Friday, December 24, 2010.  December 25 and 26 fell on Saturday and Sunday.

13    January 1, 2011 fell on a Saturday; therefore, New Year's Day was observed on Friday

14    December 31, 2010.[7]   January 1, 2, 8, and 9 also fell on Saturday or Sunday.  The Court

15    finds that Plaintiff's Informal Resolution was timely filed within 15 working days of the

16    incident.

17    The Court also rejects Defendant's argument that the Informal Resolution does not

18    raise the issue asserted in the First Amended Complaint.  It clearly states that Plaintiff is

19    complaining about an incident on December 24, 2010, where he was placed next to an active

20    inmate in the recreation yard, the inmate unraveled the fence and entered Plaintiff's cage, and

21    a fight ensued.  (Doc. 7 at 28.)  The grievance need not contain all of the allegations Plaintiff

22    makes against Defendant in his First Amended Complaint, and the conspiracy claim was

23    dismissed on screening.  (Doc. 8 at  .)  The form itself states "description of issue, problem,

24    _____

25    [6]Compare the current version of the California regulations, which requires that the
      inmate submit an appeal within 30 *calendar* days of the event, 15 CCR § 3084.8 (b)(1), and
26    that the response will be within 30 *working* days, 15 CCR § 3084.8 (c)(1).

27    [7]See http://www.timeanddate.com/calendar/print.html?year=2010&month=12&cou
28    ntry=1&typ;http://www.timeanddate.com/calendar/print.html?year=2011&month=12&co
      untry=1&typ (Last visited May 30, 2012).

and proposed solution" and provides only 10 lines for the information.  When a prison's grievance procedures do not specify the requisite level of factual detail, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009).  Defendant cites to no language in the grievance procedure specifying the content of the grievance, and the Court is unable to locate any.  The Court finds that the Informal Resolution adequately advised prison officials of the nature of the claim in the First Amended Complaint.  Thus, the Court finds that Plaintiff timely filed an adequate Informal Resolution.  The Court turns to the remainder of the grievance process.

As stated, Defendant must demonstrate that there were remedies available to Plaintiff. <u>See</u> <u>Wyatt</u>, 315 F.3d at 1119; <u>see also</u> <u>Brown v. Valoff</u>, 422 F.3d 926, 936-37 (9th Cir. 2005).  Plaintiff was only required to exhaust *available* remedies.  <u>Brown</u>, 422 F.3d at 936-37.  The PLRA's exhaustion requirement is not absolute, and certain facts may justify exceptions where remedies were effectively unavailable.  <u>Nunez v. Duncan</u>, 591 F.3d 1217, 1223-24 (9th Cir. 2010).  Here, Plaintiff does not dispute that he failed to exhaust all levels of the grievance system, but he maintains that remedies were effectively unavailable.

It is undisputed that Plaintiff received no response to the Informal Resolution. Defendant asserts through the Grievance Coordinator that in order to file a Level One Formal Grievance – the next step – the inmate must attach a copy of the Informal Resolution and response to the formal grievance. (Doc. 26, Williams Aff. ¶ 18.)  But there was no response to the Informal Resolution. Defendant argues that Plaintiff should have filed a grievance about the alleged failure to respond and that Plaintiff did not do so. (Doc. 26, Ex. 1, Attach. A, 14-101.4 § F(3).)   But filing such a grievance is a separate issue and would not, in fact, constitute exhaustion of the original issue for which no response was received.  Defendant does not claim otherwise.  Filing a grievance about a failure to respond might tend to corroborate that a document was filed, but that is all.  Defendant also argues that if Plaintiff received no response, he should have forwarded his complaint through to California. (Doc. 26, Williams Aff. ¶ 47.)  But Defendant does not direct the Court to any language in

the procedure that permits that, and the Court is not able to locate such a provision.

Based on Defendant's own evidence and the facts of this case, the Court holds that failure to respond to the Informal Resolution effectively rendered the remainder of the exhaustion process unavailable.  The LPCC grievance process is not like that of the Arizona Department of Corrections, which specifically provides that if no response is received at any level of the grievance procedure, the inmate may proceed to the next step.[8]  In Sapp v. Kimbrell, the Ninth Circuit cited with approval a  Seventh Circuit case holding that prison officials' failure to respond to a properly filed grievance makes remedies "unavailable" and therefore excuses a failure to exhaust.  623 F. 3d 813, 822 (9th Cir. 2010), citing Dole v. Chandler, 438 F.3d 804, 809, 811 (7th Cir.2006).  Moreover, this is not a situation where an inmate claims to have filed a grievance for which he received no response and then takes no action to pursue the matter.  Plaintiff filed several inquiries.  Although Defendant disputes receipt of at least one inquiry, given the misinformation provided by Defendant regarding the prison's own grievance process, the Court will resolve any factual disputes about the follow-up in Plaintiff's favor.  See Ritza, 837 F.2d at 369.

The Court finds that, on this record, Plaintiff establishes that he was excused from exhausting his administrative remedies.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendant's Motion to Dismiss (Doc. 26).

(2)  Defendant's Motion to Dismiss (Doc. 26) is **denied with prejudice**.

DATED this 4th day of June, 2012.

David G. Campbell
United States District Judge

---

[8]Arizona Department of Corrections Department Order 802, *Inmate Grievance Procedure*, 802.01 § 1.11.  http://www.azcorrections.gov/Policies/800/0802.pdf.